IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **RANDALL S. DEGEER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 09 C 6974 |
| **M. SCOTT GILLIS; JOSEPH R. SHALLECK;** | ) | |
| **and LEROY J. MERGY,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randall S. DeGeer ("DeGeer"), sued M. Scott Gillis ("Gillis"), Joseph R. Shalleck ("Shalleck"), and Leroy J. Mergy ("Mergy") (collectively, "defendants"), claiming that they refused to pay him a bonus to which he was entitled pursuant to an agreement they entered into when he joined their management consulting practice at Huron Consulting Services LLC. ("Huron"). Defendants have moved pursuant to Federal Rule 12(b)(6) to dismiss DeGeer's complaint. For the reasons discussed below, the motion is granted in part and denied in part.

### I.    Facts

Until March 2006, the defendants were partners of a management consulting firm called MSGalt & Company, LLC ("Galt"). On March 31, 2006, they entered into an Asset Purchase Agreement ("APA") with Huron, under which Huron acquired Galt, and the defendants continued their consulting practice under the name "Galt & Company,

a division of Huron." Under the APA, Huron agreed to make annual "Earn-Out" payments to the defendants for a period of four years provided that specific financial milestones and conditions were achieved.

From 1992 through July 2006, DeGeer worked for the consulting firm of Marakon Associates ("Marakon"). After the defendants' practice was acquired by Huron, they recruited DeGeer to join Galt as a Managing Director. In July 2006, DeGeer entered into a Senior Management Agreement ("SMA") with Huron. DeGeer's SMA and offer letter state that he would not be eligible to participate in Huron's employee incentive plan, but that he would be eligible to earn a discretionary bonus to be determined by the head of the Galt practice:[1]

> **Bonus Programs**. As a Managing Director of the Galt practice, Executive shall not be eligible to participate in Huron Consulting Group employee incentive plans during the Term. Executive will be eligible to earn a discretionary annual bonus based upon the practice's performance and Executive's individual performance as determined by the Galt Practice Leader and payable in accordance with Huron's standard practices.

SMA, Pl.'s Ex. A, § 2.2 (Doc. 1-1).

DeGeer alleges, however, that prior to entering into the SMA with Huron, he entered into a separate agreement with the defendants. According to DeGeer, the latter agreement included a specific compensation program under which he would earn a base

---

[1] Gillis is identified as the Galt Practice Leader.

salary of $200,000, and would be awarded an additional bonus in accordance with a predetermined formula.[2] DeGeer insists that under this agreement, the defendants' obligation to pay his bonus was not discretionary.

DeGeer received his bonuses for fiscal years 2006 and 2007 without incident, but he alleges that he received no bonus for fiscal year 2008. According to DeGeer, based on the revenue he generated for Galt, he was entitled to a bonus of $3,953,000 for 2008. To date, he has received only $800,000 (the portion of the bonus contributed by Huron). DeGeer alleges that he has repeatedly sought to recover the remaining $3,153,000 from the defendants, and

---

[2] The formula for calculating the partners' bonuses is described in the complaint as follows:

> Th[e] incentive compensation program was objective and specific to Gillis, Shalleck, Mergy and DeGeer and specifies how the annual Earn-Out payment from Huron is distributed to each of them based on their annual contributions to gross revenue (hereafter "attribution credits") for the Galt division. Attribution credits for Managing Directors are determined for each Galt client project by attributing 20% of that project's revenue to the Managing Director who initiated the client contact, 30% of that client project revenue to the Managing Director(s) responsible for converting the contact to a billable client, and 50% of that client project revenue to the Managing Director(s) who contribute to achieving the client project deliverables. Each Managing Director's total annual bonus is then determined by dividing the Managing Director's attribution credits by the total Managing Director group attribution credits, and then multiplying that percentage by the annual Earn-Out payment from Huron.

Compl. ¶ 11.

that they have refused.[3]

## II.    Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. *See, e.g.*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the nonmoving party. *See, e.g.*, *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Dismissal is warranted under Rule 12(b)(6) only where the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See, e.g.*, *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The facts must provide the defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.*

---

[3] When Huron became aware of the defendants' arrangement, it was forced to restate its financial statements for several previous years. As a result of the restatement, a number of shareholder suits have been initiated against Huron. *See, e.g.*, *Oakland County Employees' Retirement System v. Massaro*, No. 09 C 6284, 2010 WL 1378562 (N.D. Ill. April 7, 2010); *Hughes v. Huron Consulting Group, Inc. et al.*, 09 C 4734 (N.D. Ill. filed Aug. 4, 2009).

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level.  *Id.*

### III.   Discussion

DeGeer's complaint asserts eight causes of action: conversion (Count I); breach of contract (Count II); breach of the parties' partnership agreement (Count III); breach of fiduciary duty (Count IV); constructive trust (Count V); promissory estoppel (Count VI); quantum meruit (Count VII); and violation of the Illinois Wage Payment and Collection Act ("the Wage Act"), 820 ILCS 115/1 *et seq.* (Count VIII).  I discuss the defendants' arguments with respect to each claim in turn.

### A.   Conversion

In Count I, DeGeer seeks to hold the defendants liable for conversion.  "To state a claim for conversion, a plaintiff must allege (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he has made a demand for possession of the property; and (4) defendant has wrongfully assumed control, dominion, or ownership of the property without authorization."  *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (citing *Loman v. Freeman*, 890 N.E.2d 446, 461 (2008)).

Courts have often observed that "[a]n asserted right to money normally will not support a claim for conversion." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). In order to state a claim for the conversion of money, the sum in question must constitute a "specific chattel." *Id.* (quotation marks omitted). In addition, the plaintiff's right to the money must be absolute and immediate, and the money must belong to him at all times. *Id.* ("It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use.") (quotation marks and alterations omitted); *Safeco Ins. Co. v. Wheaton Bank and Trust Co.*, No. 07 C 2397, 2009 WL 2407740, at *4 (N.D. Ill. Aug. 4, 2009); *Payton v. County of Kane*, 301 F. Supp. 2d 835, 839 (N.D. Ill. 2004) ("To state a claim for conversion, plaintiffs must allege that the defendants wrongfully deprived them of money to which they had a right to immediate possession.").

According to DeGeer, the defendants have committed conversion by "exert[ing] unauthorized and wrongful assumption and control over [his] portion of the Galt Earn-Out." Compl. ¶ 27. The defendants argue that the claim must be dismissed for several reasons. While not all of their arguments are convincing, the defendants are ultimately correct in asserting that Count I must be dismissed.

The defendants first contend that DeGeer's conversion claim

fails because the funds he seeks cannot be characterized as a "specific chattel." Specifically, defendants claim that DeGeer's bonus money was never segregated from the other funds of which Galt's 2008 Earn-Out was comprised. This argument has little merit. As several courts have squarely held, funds need not be segregated in order to form the basis for a conversion claim. *See, e.g.*, *Doing Steel, Inc. v. Castle Const. Corp.*, No. 02 C 1674, 2002 WL 31664476, at *3 (N.D. Ill. Nov. 21, 2002) ("Although it is not necessary that the money be specifically segregated or earmarked, the money must be a determinate amount and identifiably distinct."); *Roderick Development Inv. Co., Inc. v. Community Bank of Edgewater*, 668 N.E.2d 1129, 1137 (Ill. App. Ct. 1996) ("Although some courts in other states continue to require funds to be segregated in order to be the subject of a conversion action, we are persuaded by the reasoning of the courts in states that recognize that converted funds may be identifiable in other ways.") (citation omitted).

Defendants are correct in maintaining that DeGeer must do more than assert a right to recover a specific sum of money. But DeGeer has done so: he alleges that his bonus is included along with other funds in a particular bank account. According to the complaint, "[t]he 2008 Earn-Out is a specific fund that DeGeer understands was deposited in a Merrill Lynch account under the name Rand Consulting, LLC." Resp. at 8; *see also* Compl.¶ 21.

Yet even if DeGeer's bonus can be characterized as a specific chattel, his conversion claim fails because he cannot show that his right to the funds was absolute and immediate and that the funds belonged to him at all times. To be sure, there is very little case authority addressing the question of when a given sum of money can be said to have belonged to a particular plaintiff "at all times," or when a plaintiff's control over, or right to, a particular sum of money can be characterized as absolute and immediate. To the extent that courts have addressed similar or related issues, however, the decisions cut against DeGeer.

In *Doing Steel, Inc. v. Castle Construction Corporation*, No. 02 C 1674, 2002 WL 31664476 (N.D. Ill. Nov. 21, 2002), for example, Castle Construction entered into a contract with a school district to build a new school. Castle hired Doing Steel, Inc. as a subcontractor. The parties' agreement called for Castle to make "progress payments" to Doing Steel with the completion of each of the project's phases. The total amount owed under the contract was $721,000, but Castle stopped making payments to Doing Steel with $114,520.50 outstanding. Doing Steel brought a suit for conversion in order to recover the outstanding amount. The court dismissed the claim, holding that because "Doing Steel was entitled to the money only upon the successful performance of its duties," the money could not be said to have belonged to Doing Steel at all times. *Id.* at *4.

Here, similarly, DeGeer was not entitled to a bonus, let alone the specific sum he seeks, unless certain conditions were met. As defendants point out, the terms of the asset purchase agreement between Huron and Galt require that the Earn-Out funds be paid to Galt, not to DeGeer personally; only later was the money to be divided up between DeGeer and the defendants. Moreover, DeGeer's right to the bonus was not absolute. The precise amount of the bonus was contingent upon a specific formula, and DeGeer's eligibility to receive any bonus at all was contingent upon Galt's ability to reach particular financial criteria. As DeGeer himself alleges, "[t]he terms of the Asset Purchase Agreement between Huron and the Defendants specifies that annual Earn-Out payments be made by Huron to the Defendants for the four year period following Closing according to an agreed formula if specific milestones and conditions are met." *See* Compl. ¶ 8; *see also* Defs.' Ex. 1, Asset Purchase Agreement at 13 (Doc 29-1 at 22). DeGeer's ownership of the funds from which his bonus was to be derived was therefore conditional and attenuated, not absolute and immediate.[4] *See also*

---

[4] The fact that DeGeer's bonus was contingent in these respects is not to say that the bonus was *discretionary*. According to DeGeer's complaint, whether Huron would be required to make an Earn-Out payment to Galt in any given year was dependent upon objective measures of Galt's profitability in that year. Similarly, the formula for determining how the Earn-Out funds were to be distributed among the partners was also based on "observable, objective and quantifiable measures" (e.g., client origination, contact development, project delivery). Compl. ¶ 12. In other words, according to DeGeer, once the criteria for the Galt Earn-Out were met, DeGeer was entitled to a bonus of a particular amount,

*Porter v. Time4Media, Inc.*, No. 05 C 2470, 2006 WL 3095750, at *7 (N.D. Ill. Oct. 30, 2006) (dismissing conversion claim seeking bonus payments because plaintiff could not show that the amounts in question belonged to him at all times).[5]

Tellingly, DeGeer fails to cite even a single case in support of his position. Indeed, he makes no affirmative argument whatsoever in support of his claim that the bonus funds belonged to him at all times, or that his right to the funds was immediate and absolute. Instead, he merely attempts to distinguish two of the cases cited by the defendants.

Because DeGeer's own complaint indicates that the bonus funds did not belong to him at all times, I grant the defendants' motion to dismiss his claim for conversion.

## B. Breach of Contract

Count II of DeGeer's complaint asserts a claim for breach of contract. "To properly plead a breach of contract claim, plaintiff must allege the existence of a valid contract, his performance under its terms, a breach by defendant, and resulting injury to plaintiff." *Akinyemi v. JP Morgan Chase Bank, N.A.*, 908 N.E.2d 163, 168 (Ill. App. Ct. 2009). DeGeer claims that he had a valid

---

and none of the partners had any discretion to withhold the bonus or to adjust the amount.

[5] Defendants also argue that DeGeer's conversion claim must be dismissed because it is merely a repackaging of his breach of contract claim. Since I have dismissed the conversion claim on other grounds, I do not discuss that issue here.

and enforceable contract with the defendants, and that they breached the agreement by withholding payment of his bonus. The defendants advance several arguments for Count II's dismissal.

The defendants begin by contending that DeGeer's breach of contract claim is defeated by the plain terms of the SMA. In particular, they cite § 2.2 of the agreement, which, as set forth above, provides:

> **Bonus Programs**. As a Managing Director of the Galt practice, Executive shall not be eligible to participate in Huron Consulting Group employee incentive plans during the Term. Executive will be eligible to earn a discretionary annual bonus based upon the practice's performance and Executive's individual performance as determined by the Galt Practice Leader and payable in accordance with Huron's standard practices.

SMA, Pl.'s Ex. A, § 2.2.

While the defendants are no doubt correct in maintaining that under this provision, bonuses awarded pursuant to the SMA are discretionary, their response largely misses the point: DeGeer's breach of contract claim is not based on the SMA; it is based on a separate agreement that he allegedly entered into with the defendants. Under that agreement, DeGeer maintains, payment of his bonus was mandatory.

In response, defendants insist that the existence of any such separate agreement between DeGeer and the defendants is plainly foreclosed by the SMA's integration clause. Specifically, the SMA provides:

> **10.9 Entire Agreement**. Except as otherwise expressly set

forth herein, this Agreement sets forth the entire understanding of the parties, and supersedes and preempts all prior oral or written understandings and agreements with respect to the subject matter hereof.

SMA, Pl.'s Ex. A, § 10.9.

But this argument is circular: it purports to show that the SMA applies to the dispute by citing the SMA's own provisions. By its own terms, however, the SMA purports to be the understanding between "the parties," and explains that "the parties" refer to Huron, on the one hand, and DeGeer on the other. *See* SMA at 1 ("SENIOR MANAGEMENT AGREEMENT (the 'Agreement'), effective as of 'Agreement Date'), by and between Huron Consulting Services LLC, a Delaware limited liability company (the 'Company'), and Randall S. DeGeer (the 'Executive').").

To be sure, the SMA states that, for purposes of the agreement, "Huron" is intended to include all of the Company's subsidiaries, which presumably includes Galt. *See* SMA, Preliminary Recital B ("For purposes of this Agreement, the term the 'Company' shall include the Company, its subsidiaries and assignees and any successors in interest of the Company and its subsidiaries and the term the 'Parent' shall include its assignees and any successors in interest of the Parent."). Nevertheless, DeGeer's suit is brought only against the three defendants, not against Huron or Galt. Moreover, the defendants themselves expressly contend that they are not parties to the SMA, but instead are third-party beneficiaries under the agreement.

The defendants point out that the latter part of the integration clause states that it "supersedes and preempts *all* prior oral or written understandings and agreements with respect to the subject matter hereof" (emphasis added). However, the reference to "the parties" in the preceding portion of the clause indicates that the provision is speaking of all prior understandings and agreements *between DeGeer and Huron*, not those between DeGeer and all other third parties.

Although there are no Illinois cases directly on point, courts in other jurisdictions have held that merger or integration clauses apply only to contracts between the same parties. *See, e.g.*, *National Sur. Corp. v. Prairieland Const. Inc.*, 354 F. Supp. 2d 1032, 1038 (E.D. Mo. 2004); *Belmont Homes, Inc. v. Law*, 841 So.2d 237, 241 (Ala. 2002); *Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co. of Arkansas*, 984 S.W.2d 6, 12 (1998) (merger did not apply to contract because the same parties and the same subject matter were not involved); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App. 1997) ("Merger happens when the *same* parties to an earlier agreement later enter into a written integrated agreement covering the *same* subject matter.") (emphasis in original); *Foote v. Taylor*, 635 P.2d 46, 48 (Utah 1981) ("The general rule is that one contract will not merge into another unless it is plainly shown that that was the intent of the parties; and this is usually where the later contract fully covers an

-13-

earlier one, but not so unless the two contracts are between the same parties."). Since the parties to the agreement between DeGeer and the defendants are different from the parties to the SMA, the SMA's merger clause does not apply to DeGeer's agreement with the defendants.

Adopting a different line of argumentation, the defendants next contend that Count II must be dismissed because DeGeer has failed to allege sufficient information about the separate contract that he claims existed between them. I disagree. The defendants base their argument on *Curran v. JP Morgan Chase, N.A.*, 633 F. Supp. 2d 639 (N.D. Ill. 2009). The plaintiff in *Curran* alleged a breach of contract claim based on her employer's failure to pay her a $15,000 bonus. *Id.* at 644. However, the plaintiff's complaint did not make clear whether her claim was based on the employer's profitability incentive plan -- under which bonuses were to be awarded on a discretionary basis -- or on some other contract. *Id.* Even after the employer objected to the ambiguity, the plaintiff refused to clarify the agreement in question. As a result, the court dismissed the claim, reasoning that if the plaintiff's claim were based on the incentive plan, there was no contract because the bonus was discretionary, and if her claim were based on some other purported agreement, her complaint failed to give the defendant proper notice of the claim. *Id.*

DeGeer's complaint is very different from the one at issue in

*Curran*.  For one thing, DeGeer has made perfectly clear that his claims are based on his agreements with the defendants, not on the SMA.  DeGeer's complaint also clearly alleges that his agreement with the defendants was formed prior to his entering the SMA with Huron.  Furthermore, DeGeer's complaint contains a great deal of specificity regarding the terms of his alleged separate agreement with the defendants, including, for example, the formula according to which the partners' bonuses was to be calculated.  *See* Compl. ¶¶ 11-13.

Because DeGeer's breach of contract claim is based on an alleged agreement with the defendants that is separate from his SMA with Huron, the defendants' motion to dismiss Count II is denied.[6]

## C.    Breach of Partnership Agreement

In Count III, DeGeer alleges that his agreement with the

_____

[6] Defendants argue at some length that they are third-party beneficiaries under the SMA, and that as such, they may enforce the agreement even though they are not parties to it.  This issue is a red herring, however, for as explained above, the operative agreement for purposes of DeGeer's breach of contract claim is the one between himself and the defendants, not the SMA between himself and Huron.  The central question is not whether the defendants may enforce the SMA's terms, but whether the SMA supersedes DeGeer's earlier agreement with the defendants.  For this reason, I do not address in any depth the defendants' arguments concerning their ability to enforce the SMA.

Additionally, I note that many of the defendants' arguments for the dismissal of DeGeer's other claims presuppose that the SMA is the controlling agreement between the parties.  Having rejected that claim, all of these arguments fail.  Rather than rehearsing the same analysis for each of these arguments in what follows, I have omitted discussion of them unless otherwise necessary.

defendants constituted a partnership agreement, and he maintains that the defendants breached the agreement by withholding his bonus. Compl. ¶ 23. As with other breach of contract claims, to prevail on his claim that the defendants breached the parties' partnership agreement, DeGeer must show: (1) the existence of a contract between himself and the defendants; (2) that he performed his obligations under the contract; (3) that the defendants breached the contract; and (4) that he sustained damages as a result of the defendants' breach. *See, e.g.*, *Donovan v. Quade*, No. 05 C 3533, 2009 WL 3380998, at *4 (N.D. Ill. Oct. 15, 2009) (citing *International Supply Co. v. Campbell*, 907 N.E.2d 478, 487 (Ill. App Ct. 2009). As with defendants' arguments concerning Count II, I am unpersuaded by defendants' arguments for dismissal of Count III.

Defendants first contend that Count III must be dismissed because DeGeer has failed to sufficiently allege the existence of a partnership agreement. They maintain that "the only indicia of a partnership alleged by Plaintiff is the 'sharing' of profits pursuant to a purported partnership agreement," and that the mere sharing of profits is not enough to establish a partnership. Defs.' Mem. at 14. But DeGeer's complaint does not allege merely that he and the defendants shared profits; he also specifically alleges that he and the defendants held themselves out as partners. *See* Compl. ¶ 37 ("DeGeer and Defendants have held themselves out as partners to employees of Galt and to prospective and current

clients of Galt."). Defendants argue that the documents cited by DeGeer fail to substantiate his allegations. At this stage of the litigation, however, DeGeer is not is not required to plead or produce evidence. *See, e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quotation marks omitted) (noting that a complaint need not plead evidence); *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2009 WL 855798, at *5 (N.D. Ill. Mar. 30, 2009) ("[W]hile a plaintiff at the pleading stage must allege plausible facts, it need not marshal all of its evidence.").

Defendants also suggest that DeGeer's allegations regarding the parties' alleged partnership are conclusory. Again, I disagree. As the Seventh Circuit has consistently affirmed, "[p]laintiffs need not plead facts, but they must give enough detail to illuminate the nature of the claim and allow defendants to respond." *George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) (citation omitted); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (noting that in *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), the Supreme Court "reiterated that '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'"); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Plaintiffs need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading.").

Finally, the defendants argue that even if DeGeer has adequately alleged the existence of a partnership agreement, he has failed to allege that the property he seeks -- viz., his share of the Galt Earn-Out -- is partnership property. *See* Defs.' Mem. at 15 n.8. Their argument is based on the Illinois Uniform Partnership Act, which provides: "[p]roperty acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes." 805 ILCS 206/204(d). According to the defendants, since DeGeer alleges that the Earn-Out was paid to them in exchange for the work they performed for Huron, it should be presumed that the funds are not partnership property.

This argument has not been sufficiently developed: it consists of a single paragraph, relegated to a footnote, and is unsupported by citation to any case authority. In the absence of fuller discussion, I decline to consider it here. *See, e.g., United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (by failing to raise issue "other than by a passing reference in a footnote, [defendant] has waived it"); *see also United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are

unsupported by pertinent authority, are waived."). For these reasons, defendants' motion to dismiss Count III is denied.

**D.   Breach of Fiduciary Duty**

Count IV of DeGeer's complaint advances a claim for breach of fiduciary duty. "To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *Alpha School Bus Co., Inc. v. Wagner*, 910 N.E.2d 1134, 1158 (Ill. App. Ct. 2009). DeGeer argues that since he and the defendants were partners, they owed one another fiduciary duties. Specifically, he claims that they "owed each other fiduciary duties in connection with the distribution of the Galt Earn-Out and with respect to sharing information in that regard." Compl. ¶ 46. He alleges that the defendants breached their fiduciary duties by failing to pay him his share of the Earn-Out, and by failing to respond to his requests for information about his bonus.

Defendants argue that Count IV must be dismissed because DeGeer's breach of fiduciary duty claim is duplicative of DeGeer's breach of contract claim. I agree. It is well-settled that duplicative counts in a complaint may be properly dismissed. *See, e.g.*, *Nagy v. Beckley*, 578 N.E.2d 1134, 1136 (Ill. App. Ct. 1991). Courts have frequently found that claims for breach of contract and

claims for breach of fiduciary duty are duplicative of one another and must be dismissed. *See, e.g.*, *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1270 (Ill. App. Ct. 2008) (plaintiff's claims for breach of fiduciary duty and breach of contract were duplicative of her claim for legal malpractice"); *see also Dahlin v. Jenner & Block, L.L.C.*, No. 01 C 1725, 2001 WL 855419, at *9 (N.D.Ill. July 26, 2001); *cf. Beringer v. Standard Parking O'HARE Joint Venture*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4890501, at *5 (N.D. Ill. Nov. 12, 2008) (claims for breach of fiduciary duty and negligence were duplicative); *Calderon v. Southwestern Bell Mobile Systems, LLC*, No. 02 C 9134, 2003 WL 22340175, at *6 (N.D. Ill. Oct. 10, 2003); *Kirkland & Ellis v. CMI Corp.*, No. 95 C 7457, 1996 WL 559951, at *10 (N.D. Ill. Sept. 30, 1996) (professional negligence and the breach of fiduciary duty claims were redundant)

DeGeer insists that the counts are not redundant because his claim for breach of fiduciary duty is premised on the parties' partnership relationship, whereas his claim for breach of contract is based on the parties' contract. Resp. at 20. This is a distinction without a difference. True, the allegations in Counts II and IV are not identical. The relevant inquiry, however, is not whether the allegations are the same, but whether the claims are based on the same operative facts and the same injury. *Kirkland & Ellis*, 1996 WL 559951, at *10. DeGeer's claims for breach of contract and breach of fiduciary duty are based on the same

underlying facts and the same harm.  Accordingly, defendants'
motion to dismiss Count IV is granted.

### E.  Constructive Trust

In Count V, DeGeer purports to assert "constructive trust" as
a cause of action.  A constructive trust may be imposed where "a
person obtains money to which he is not entitled, under
circumstances such that in equity and good conscience he ought not
to retain it." *SwedishAmerican Hosp. Ass'n of Rockford v. Illinois
State Med. Inter-Ins. Exchange*, 916 N.E.2d 80, 103 (Ill. App. Ct.
2009).  In order to justify the imposition of a constructive trust,
"a plaintiff must show the existence of identifiable property to
serve as the res upon which a trust can be imposed and possession
of that res or its product by the person who is to be charged as
the constructive trustee." *Salamon v. Messina*, No. 87 C 2097, 1990
WL 205454, at *3 (N.D. Ill. Dec. 5, 1990) (quotation marks
omitted); *see also Senese v. Climatemp, Inc.*, 582 N.E.2d 1180,
1188-89 (Ill. App. Ct. 1991) ("In an action for a constructive
trust, the complaint must allege a fiduciary relationship existed
and must allege facts charging actual or constructive fraud.").

DeGeer contends that he is entitled to a constructive trust
because the defendants have wrongfully retained possession of his
share of the Galt Earn-Out.  Compl. ¶¶ 50, 51.  As defendants
correctly point out, however, DeGeer mistakenly conceives of a
constructive trust as a free-standing cause of action.  In point of

-21-

fact, courts have consistently affirmed that the imposition of a constructive trust is a particular type of *remedy*. *See, e.g.,* *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998); *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280 (Ill. App. Ct. 2004); *see also Cashen v. Integrated Portfolio Management, Inc.*, No. 08-CV-268, 2008 WL 4976210, at *5 (N.D. Ill. Nov. 20, 2008). Accordingly, Count V must be dismissed.

In his response brief, DeGeer requests that if he is found to have misapprehended the underlying doctrine, he be allowed to replead his constructive trust allegations as a remedy for his other substantive claims. Against this, defendants argue that even if DeGeer were allowed to replead, he would not be entitled to a constructive trust. This is because, according to the defendants, DeGeer is unable to identify a particular res upon which a constructive trust could be placed. In making this assertion, however, the defendants essentially restate their earlier argument -- made in connection with DeGeer's conversion claim -- that his bonus did not constitute a specific chattel. DeGeer's bonus constitutes a sufficiently particular res for purposes of imposing a constructive trust. Accordingly, Count V is dismissed. However, DeGeer is given leave to replead constructive trust as a remedy, rather than as a separate claim for relief.

## F.  Promissory Estoppel

In Count VI of his complaint, DeGeer asserts a claim for promissory estoppel.  "Generally, courts have used the doctrine of promissory estoppel in order to enforce promises when consideration is lacking, such as in cases involving gratuitous promises, charitable subscriptions, and certain intrafamily promises." *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 114 (Ill. 1999).  "However, in recent years, courts have expanded the use of the doctrine to enforce promises underlying otherwise defective contracts and promises made during the course of preliminary negotiations." *Id*.

"In order to state a claim for promissory estoppel in Illinois, Plaintiff must plead the following elements: (1) an unambiguous promise; (2) reasonable and justifiable reliance by the party to whom the promise was made; (3) the reliance was expected and foreseeable by the promisor; and (4) the promisee relied upon the promise to his or her detriment." *Canadian Pacific Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 WL 1907943, at *5 (N.D. Ill. April 17, 2003) (quotation marks omitted). The doctrine of promissory estoppel generally does not apply where a contract exists between the parties.  *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) ("Promissory estoppel is meant for cases in which a promise, not being supported by consideration, would be unenforceable under conventional principles of contract law.  When there is an express contract governing the

relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill.").

Defendants first argue that DeGeer's promissory estoppel claim fails because his complaint alleges the existence of an actual contract for which sufficient consideration has been given. I agree. Normally, the fact that a complaint elsewhere alleges the existence of a contract between the parties is not fatal, for under Federal Rule 8, plaintiffs are permitted to plead causes of action in the alternative. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Here, however, DeGeer has not pleaded his promissory estoppel claim in the alternative because Count VI incorporates the complaint's other allegations by reference. *See* Compl. ¶ 53. Consequently, his promissory estoppel allegations include references to the existence of a contract between the parties. *See, e.g.*, *The Sharrow Group v. Zausa Development Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) ("Nonetheless, while plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract, which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel."); *Roche v. Liberty Mut. Managed Care, Inc.,* No. 07-cv-331-JPG, 2008 WL 4378432, at *3 (S.D. Ill. Sept. 23,

2008) (same).

DeGeer has asked for leave to amend his complaint in the event that his promissory estoppel claim is found to have been improperly pleaded. As in the case of Count V's constructive trust claim, however, the defendants argue that repleading would be futile because DeGeer's promissory estoppel claim fails on other grounds. Specifically, the defendants contend that DeGeer cannot show detrimental reliance on their promises -- the fact that he left his former position, devoted significant effort to earning revenue for the Galt practice, etc. -- because he was contractually obligated to these things under the SMA. Further, the defendants maintain that DeGeer cannot allege that they broke any promise because the SMA made clear that the bonus was discretionary. Similarly, they argue that DeGeer cannot allege reasonable reliance on the promise because the SMA makes clear that the bonus is a matter of discretion. Each of these arguments, however, presupposes that the SMA governs the parties' relationship. Because DeGeer alleges that the parties entered into a separate agreement, these arguments are wide of the mark.

The defendants also assert in passing that "there can be no reasonable reliance on an alleged promise to provide a bonus, because a bonus is, by its very nature, discretionary." Defs.' Mem. at 21. This appears to suggest that, regardless of whether the SMA applies, DeGeer's claim fails by definition. Defendants cite only

two cases in support of this contention; neither of these stands for the proposition that bonuses are inherently discretionary. Thus, in *Moore v. Nutrasweet Co.*, 836 F. Supp. 1387 (N.D. Ill. 1993), the court held that the plaintiff's reliance on her employer's promise of a bonus was not reasonable. However, the court's ruling was based on the fact that her employer promised only that she would be *eligible* to earn a bonus; it was not based on the notion that bonuses are inherently discretionary. *Id.* at 1404-05.

Similarly, in *Stark v. PPM America, Inc.*, 354 F.3d 666 (7th Cir. 2004), the plaintiff argued that he was entitled to a bonus under a promissory estoppel theory, arguing that it was tacitly understood within the company that bonuses were discretionary. The court rejected this claim, noting overwhelming evidence in the record that bonuses were discretionary. To be sure, the court also remarked that the "facts show[ed] that bonuses, *as the name implies*, were not guaranteed," *id.* at 672 (emphasis added), and that "[t]he normal understanding of severance pay (when not provided for in a written plan), as of bonuses, is that it is at the discretion of the employer," *id.* (quoting ). The court also noted, however, that this understanding of bonuses as discretionary does not apply where the parties have agreed on a different understanding. That is precisely what DeGeer alleges here.

In short, the defendants are correct in contending that Count VI must be dismissed. This is so, however, only because DeGeer's

promissory estoppel has been improperly pleaded.  Hence, DeGeer is given leave to replead the claim in an amended complaint.

### G.   Quantum Meruit

In Count VII, DeGeer asserts a cause of action under the doctrine of quantum meruit.  "To recover under a quantum meruit theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) defendant accepted this service, and (4) no contract existed to prescribe payment for this service." *K. Miller Const. Co., Inc. v. McGinnis*, 913 N.E.2d 1147, 1153 (Ill. App. Ct. 2009) (quotation marks omitted); *see also Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d 279, 284 (7th Cir. 1999) ("To be successful on a quantum meruit theory under Illinois law, Fischer must prove (1) performance of services, (2) the reasonable value of the services, and (3) the receipt by the defendant from the plaintiff of a benefit which it would be unjust to retain without paying compensation.").

As with DeGeer's promissory estoppel claim, defendants correctly maintain that Count VII has been improperly pleaded and must accordingly be dismissed.  The defendants note that, as with promissory estoppel, a claim sounding in quantum meruit cannot be pursued where the parties are alleged to have entered into an express contract.  *K. Miller Const.*, 913 N.E.2d at 1153 ("*Quantum meruit* recovery is unavailable where the parties have an express

contract on which the *quantum meruit* claim rests."). While quantum meruit and breach of contract claims can be pleaded in the alternative, Count VII incorporates by reference the complaint's other allegations, including those regarding his agreement with the defendants. *See, e.g.*, *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (plaintiff failed to properly plead quantum meruit claim in the alternative, where one of the complaint's paragraphs reasserted all previous allegations, including those alleging the existence of a contract).

Defendants further argue, however, that Count VII must be dismissed with prejudice because DeGeer performed services not for them, but for Huron. Since a plaintiff may bring a quantum meruit claim only against the party for whom he performed services, the defendants argue that the claim is not properly asserted against them. I am not persuaded. DeGeer's complaint specifically alleges that he performed services that benefitted the defendants (or benefitted Galt and thereby benefitted the defendants). *See, e.g.*, Compl. ¶¶ 21, 22, 59. Since the Galt practice was part of Huron, there is a sense in which DeGeer can be said to have performed services that benefitted Huron; but this is so only secondarily. For purposes of his quantum meruit claim, DeGeer has properly alleged that the defendants benefitted from his services. The defendants also claim that in defending his claim under the Illinois Wage Act, DeGeer insists that his work was performed for Huron.

This is true, but once again, DeGeer maintains that he worked for Huron by virtue of the fact that he worked with the defendants in the Galt practice. As a result, DeGeer's allegations in connection with his Wage Act claim do not undermine his quantum meruit claim.[7]

In sum, then, Count VII is dismissed without prejudice to DeGeer's right to replead his quantum meruit claim in an amended complaint.

### H.    The Illinois Wage Act

DeGeer's final cause of action is asserted pursuant to the Illinois Wage Payment and Collection Act. "The purpose of the Act is to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation without retaliation from employers." *Miller v. Kiefer Specialty Flooring, Inc.*, 739 N.E.2d 982, 987 (2000). Bonuses are among the forms of compensation recoverable under the Act. *See, e.g.*, *Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 419 F.3d 594, 597 (7th Cir. 2005); *Zabinsky v. Gelber Group, Inc.*, 807 N.E.2d 666, 670 (Ill. App. Ct. 2004) (noting that the Wage Act "defines 'final compensation' as 'wages, salaries, earned commissions, *earned bonuses*, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the

---

[7] Furthermore, as is explained below, I reject DeGeer's attempt to use his work for Huron as a basis for invoking the Wage Act.

2 parties'") (quoting 820 ILCS 115/2).

Defendants argue that Count VIII must be dismissed because the Wage Act does not apply to out-of-state employers. I agree. *See, e.g.*, *Liaquat Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 912 (Ill. App. Ct. 2001). According to DeGeer's own complaint, none of the defendants is a citizen of Illinois: Shalleck and Mergy are citizens of Connecticut; and Gillis is a citizen of South Carolina. Compl. ¶ 2.

DeGeer argues that the defendants can nonetheless be held liable under the Act by virtue of their status as Huron's agents. In particular, DeGeer cites 820 ILCS 115/13, which provides that "[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. In other words, DeGeer appears to claim that since Huron and Galt are in-state employers, and the defendants are agents of Huron and Galt, it follows that the defendants may be held liable under the Act.

Several courts have entertained this argument and have consistently rejected it. *See, e.g.*, *Porter v. Time4Media, Inc.*, No. 05 C 2470, 2006 WL 3095750, at *6 (N.D. Ill. Oct. 30, 2006) ("While the Wage Act does provide that an officer or agent who knowingly permits an employer to violate the Act shall be deemed to be an employer, it is axiomatic that the agent or officer must also

be under the purview of the Act."); *Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 WL 950634, 18 n.4 (N.D. Ill. Mar. 18, 2005) ("Under the Illinois Wage Act, a corporate officer who knowingly permits a violation of the Act shall be deemed an employer of the corporation's employees. However, as . . . the Act does not apply to out-of-state employers . . . , no violations of the Act have occurred and 820 ILCS 115/13 is not implicated.") (citation omitted); *Liaquat Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 913 (Ill. App. Ct. 2001) (holding "that the Wage Act applies only to Illinois employees and Illinois employers"); *Glass v. Kemper Corp.*, 920 F. Supp. 928, 931 (N.D. Ill. 1996) ("In plain, grammatically correct English, then, the Wage Act applies to a group consisting of employers and employees, all of whom are in Illinois.").

Since the Wage Act applies only to in-state employers, and since none of the defendants is a citizen of Illinois, DeGeer's Wage Act claim must be dismissed.

### IV.   Conclusion

For the reasons explained above, defendants' motion to dismiss is granted in part and denied in part. Specifically, the motion is granted as to Counts I, IV, V, VI, VII, and VIII, and denied as to Counts II and III. Counts V, VI, and VII are dismissed without prejudice to DeGeer's right to replead the claims in an amended complaint.

**ENTER ORDER:**

_____
 **Elaine E. Bucklo**
United States District Judge

Dated: April 21, 2010