IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| **RANDALL S. DEGEER,** | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Case No: | 09 CV 06974 |
| | ) | | |
| **M. SCOTT GILLIS;** | ) | | |
| **JOSEPH R. SHALLECK; and** | ) | **PLAINTIFF DEMANDS** | |
| **LEROY J. MERGY,** | ) | **TRIAL BY JURY** | |
| | ) | | |
| Defendants. | ) | | |

**PLAINTIFF RANDALL S. DEGEER'S RESPONSE IN OPPOSITION TO
DEFENDANTS M. SCOTT GILLIS, JOSEPH R. SHALLECK AND
LEROY J. MERGY'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO
THEIR DOCUMENT REQUEST NOS. 50, 51 AND 52**

Plaintiff Randall S. DeGeer ("DeGeer"), by his undersigned attorneys and for his Response in Opposition to Defendants M. Scott Gillis ("Gillis"), Joseph R. Shalleck ("Shalleck"), and Leroy J. Mergy's ("Mergy's") (together, "Defendants'") Motion to Compel DeGeer's Production of Documents in Response to Defendants' Document Request Nos. 50, 51 and 52, states as follows:

**INTRODUCTION**

Defendants seek documents reflecting DeGeer's marketing activities on behalf of his current employer after he resigned from Huron Consulting Services, LLC ("Huron") on October 28, 2009. DeGeer's post-October 28, 2009, marketing efforts have no relevance to any claim or defense in this case. See Federal Rule of Civil Procedure 26(b)(1). This case involves a dispute between DeGeer and Defendants over compensation DeGeer earned while employed by the Galt practice ("Galt") of Huron in 2008 and 2009. Contrary to Defendants' assertion, this case is not

1

about DeGeer stealing Galt/Huron clients. In arguing for the relevance of these documents, Defendants attempt to hang their hat on a baseless, conclusory and unsupported allegation in their Counterclaim that DeGeer solicited clients of the Galt division for his own benefit. (See Defendants' Answer and Counterclaims to the Second Amended Complaint, Document No. 82, ¶ 47.) Defendants cite no factual support for that allegation in their Counterclaim.[1] Id. Defendants argue in their Motion that documents post-dating DeGeer's October 28, 2009, resignation "*may well* reflect a continuation" of marketing efforts beginning before that date (Motion to Compel, ¶ 6) (emphasis supplied). That speculation alone cannot and does not render this category of documents relevant.

    Defendants' assertion that DeGeer's post-October 2009 marketing activities are relevant is also belied by DeGeer's Senior Management Agreement with Huron (hereinafter, "SMA"). (See the Affidavit of Randall S. DeGeer, ¶ 2, and Ex. 1 thereto, attached hereto as Exhibit A.) Pursuant to that agreement, upon leaving Huron DeGeer is only prohibited from providing services to a person or company to whom Galt/Huron provided services who DeGeer a) obtained as a client for Huron within the previous two years; or b) provided services for within the previous twelve months; or c) sent a formal proposal to within the previous six months (Ex. 1 to Ex. A, Section 6.4). Only one client, Anglo-American, fits the definition of "Client" under the terms of DeGeer's SMA, and DeGeer has not solicited or provided services to any representative of that company since he resigned from Huron (Ex. A, ¶ 3). Defendants are well aware of the terms of the SMA as they used it as a basis for their futile Motion to Dismiss. (See Defendants' January 20, 2010, Motion to Dismiss, Document No. 27, pg. 10.)

---

[1] Defendants filed their frivolous Counterclaims on July 2, 2010 - well after it became clear that DeGeer objected to the production of these documents.

Defendants are also precluded from pursuing any claims with regard to DeGeer's conduct with clients prior to December 31, 2009, because they surrendered all such rights, assuming for the sake of argument they ever had any such rights, in an Asset Purchase Agreement with Huron. (See Ex. A, ¶ 4; H 70-149, attached as Ex. 2 to Ex. A, Section 2.2(h).) Documents relating to DeGeer's marketing activities prior to December 31, 2009, therefore, have no relevance to any claim held by Defendants. Further, Huron conducted a lengthy investigation of DeGeer upon the dissolution of DeGeer's partnership with Defendants, but found no wrongdoing on DeGeer's part (Ex. A, ¶ 12; H 9011-9013, attached as Ex. 9 to Ex. A).

Finally, DeGeer is precluded from producing post-October 28, 2009, documents to Defendants pursuant to the terms of his confidentiality agreement with his current employer, Charles River Associates, Inc. ("CRA"). Even if Defendants could establish the relevance of the discovery it seeks, it would have to pursue this discovery pursuant to a proper subpoena to CRA in which CRA could assert objections.

Defendants' efforts to obtain documents relating to DeGeer's marketing activities after he left Huron are designed to harass DeGeer and his current employer. Defendants have only two purposes in pursuing such documents: to obtain client information from a direct competitor and to hinder DeGeer's ability to make a living. DeGeer should not be compelled to produce irrelevant documents in order to further Defendants' malicious aims in this case.

## FACTUAL BACKGROUND

Prior to March 2006, Defendants were practicing as a group as management consultants (Second Amended Complaint, "SAC," ¶ 6). On March 31, 2006, Defendants and Huron entered into an Asset Purchase Agreement to acquire Defendants' consulting practice known as MSGalt & Company, LLC (SAC, ¶ 7). Following the acquisition, Defendants joined Huron as

3

employees and engaged in consulting as the Galt practice of Huron. Id. Following the acquisition of Defendants' practice by Huron, Defendants actively solicited DeGeer to leave his then-employer Marakon Associates and to join Defendants' Galt practice at Huron (SAC, ¶ 9). In July 2006 DeGeer agreed to join Defendants' practice as a Managing Director (SAC, ¶ 10). In connection with his agreement to join Galt, DeGeer and Defendants agreed upon an incentive compensation program which was specific to Gillis, Shalleck, Mergy and DeGeer as Managing Directors and specified how the annual "Earn-Out" payment from Huron was to be distributed to each of them based on their annual contributions to gross revenue (hereafter "attribution credits") for the Galt division (SAC, ¶ 11).

Upon joining the Galt practice, DeGeer signed his SMA with Huron (SAC ¶ 10; Ex. 1 to Ex. A hereto). DeGeer then immediately began marketing to prospective clients in good faith, helping generate client revenue with multiple clients (SAC, ¶ 16). Through September 2009, DeGeer generated nearly $31 million in revenue for the Galt division of Huron, representing approximately a third of total Galt division revenues generated since Huron's acquisition of Galt in March 2006. Id. After the close of each calendar year since 2006, Huron has distributed the Galt Earn-Out to Defendants' designee (SAC, ¶ 17). In accordance with DeGeer's SMA with Huron, and concurrent with DeGeer's and Defendants' agreement for distributing the Galt Earn-Out in accordance with their agreed incentive compensation program, the Earn-Out was distributed to DeGeer and Defendants for the fiscal years 2006 and 2007 in March of the respective, following calendar year. Id.

For 2008, the Galt Earn-Out was in excess of $9.5 million and was paid to Defendants' designee (SAC, ¶ 21). In accordance with the parties' agreed and documented incentive compensation program, DeGeer's total 2008 payment should have been $3,953,000.00 and

4

should have been distributed in March 2009. Id. Only $800,000 of this amount was paid to DeGeer by Huron. Id. DeGeer repeatedly demanded orally and in writing that Defendants pay him the remaining $3,153,000, but Defendants refused (SAC, ¶ 22).

By May 2009, it became clear that Defendants did not intend to pay DeGeer the remaining $3.1 million owed him under their agreed upon compensation formula for 2008, so DeGeer dissolved his partnership with Defendants (Ex. A, ¶ 5; see also D 101, attached as Ex 3 to Ex. A). Gillis acknowledged the dissolution of the partnership on May 26, 2009. (See Ex. A, ¶ 6; see also Galt 758, attached as Ex. 4 to Ex. A.) On June 3, 2009, Gillis acknowledged to Huron's CEO, Gary Holdren ("Holdren"), that Defendants had decided not to pay the $3.1 million owed to DeGeer. (See Ex. A, ¶ 7; see also H 3572, attached as Ex. 5 to Ex. A.) On June 17, 2009, Mary Sawall ("Sawall"), Huron Human Resources Director, wrote to all three Defendants to inform them that until Huron's counsel concluded their investigation, DeGeer was to be considered "part of the Galt practice" and was to "operate independently as [Huron] sort[ed] out these issues" (Ex. A, ¶ 8; H 8756, attached as Ex. 6 to Ex. A). A few days later, Sawall also instructed Gillis not to say anything disparaging about DeGeer or about the conflict between Defendants and DeGeer at an upcoming practice meeting in Florida (Ex. A, ¶ 9; H 9583, attached as Ex. 7 to Ex. A). Despite these instructions, Gillis announced to the entire Galt division in late June 2009 that DeGeer was no longer part of the practice (Ex. A, ¶ 10; H 9518-9519, attached as Ex. 8 to Ex. A).

From May 18, 2009, until his resignation from Huron on October 28, 2009, DeGeer continued working for Huron (Ex. A, ¶ 11). During that time DeGeer solicited clients and marketed for the benefit of Huron. Id. On DeGeer's last day, Sawall emailed Defendants, expressing confusion at their desire to hold DeGeer to his 60-day notice period "since

[Defendants] wanted to fire [DeGeer]," and surmising that Defendants' action was "intended to keep [DeGeer] from working, which [Huron] really can't do" (Ex. A, ¶ 12; H 9518-9519, attached as Ex. 8 to Ex. A). Sawall also informed Defendants that Huron imaged DeGeer's computer and had found no evidence that DeGeer violated his restrictive covenants or disparaged anyone. Id. Sawall emailed Defendants again on the same date and requested that they provide a "good business reason" to hold DeGeer to the 60-day notice provision and informed them that Huron intended to protect DeGeer (Ex. A, ¶ 12; H 9011-9013, attached as Group Ex. 9 to Ex. A). Defendants never provided that "good business reason" to Huron (Ex. A, ¶ 13). DeGeer resigned on October 28, 2009, and then went to work for CRA.

On December 31, 2009, Defendants and Huron parted ways and agreed that Huron retained any and all rights to claims against DeGeer for his conduct on or before that date. (See Ex. A, ¶ 4; H 70-149, attached as Ex. 2 to Ex. A, Section 2.2(h).) Resultant of Huron conducting their own internal investigation following DeGeer's dissolution of the partnership, Huron has never claimed that DeGeer improperly solicited clients for his own benefit while employed by Huron.

## ARGUMENT

### *Request Nos. 50 & 51*

Document Request No. 50 demands all documents reflecting, referring or relating to DeGeer's solicitation of Clients, as defined in Section 6.4 of his SMA, during the period from September 2008 to date (Motion to Compel, ¶ 5). Document Request No. 51 demands all documents reflecting, referring or relating to DeGeer's solicitation of, or marketing activities directed to, actual or potential clients (including, without limitation, Anglo-American, Cynthia Carroll, Dow Chemical, Rohm and Haas, Alcoa, Belden and Synventive) during the period

September 2008 to date. Id. DeGeer has already produced any and all documents in his possession or control responsive to these Requests for the pre-October 28, 2009, time frame. (See July 12 and 15, 2010, emails from DeGeer's counsel, Kasey Folk, to Defendants' counsel, Eric Nelson, attached hereto as Exhibit B.)

Documents responsive to Request Nos. 50 and 51 for the post-October 28, 2009, time frame after DeGeer left Huron are wholly irrelevant to this dispute. The non-solicitation provision contained in DeGeer's SMA with Huron states that upon leaving Huron, DeGeer is only prohibited from providing services to a person or company to whom Galt/Huron provided services who DeGeer a) obtained as a client for Huron within the previous two years; or b) provided services for within the previous twelve months; or c) sent a formal proposal to within the previous six months (Ex. 1 to Ex. A, Section 6.4). This provision states, in relevant part:

> Accordingly, and in consideration of the Company's employment of Executive and the various benefits and payments provided in conjunction therewith, Executive agrees that during the Employment period and for the longer period ("Restricted Period") thereafter of (i) the period during which Executive is entitled to receive severance payments under Section 5.2(a)(i) or (ii) twelve (12) months following any termination of employment with the Company, Executive will not, whether or not Executive is then self-employed or employed by another, directly or through another, provide services that are the same or similar to those services offered for sale and/or under any stage of development by the Company at the time of Executive's termination, to any Client of the Company whom Executive:
>
> (a) obtained as a Client for the Company; or
>
> (b) consulted with, provided services for, or supervised the provision of services for during the twelve (12) month period immediately preceding termination of Executive's employment; or
>
> (c) submitted or assisted in the submission of a proposal for the provision of services during the six (6) month period immediately preceding termination of Executive's employment.

7

> "Client" shall mean those persons or firms for whom the Company has either directly or indirectly provided services within the twenty-four (24)-month period immediately preceding termination of Executive's employment and therefore includes both the referral source or entity that consults with the Company and the entity to which the consultation related. "Client" also includes those persons or firms to whom Executive has submitted a proposal (or assisted in the submission of a proposal) to perform services during the six (6) month period immediately preceding termination of Executive's employment.

(Ex. 1 to Ex. A, Section 6.4). As Defendants well know there exists only one company, Anglo-American, which fits the definition of "Client" under DeGeer's SMA (Ex. A, ¶ 3). DeGeer represents that he has not solicited or provided services to Anglo-American since leaving Huron on October 28, 2009 (Ex. A, ¶ 3). Ms. Folk communicated this representation to Mr. Nelson on multiple occasions prior to Mr. Nelson's filing of Defendants' Motion to Compel. (See Ex. B.) The SMA does not prohibit DeGeer from soliciting or providing services to the other companies and/or persons listed in Request No. 51 (Ex. 1 to Ex. A). Further, DeGeer is not prohibited from contacting any companies or persons listed in Request No. 51, and has not provided services to any of the companies or persons listed therein. Id.

DeGeer's marketing activities in between October 28, 2009, and December 31, 2009, are also irrelevant because Defendants are precluded from pursuing any claims with regard to DeGeer's conduct with clients prior to December 31, 2009. Defendants surrendered all such rights in their December 31, 2009, Asset Purchase Agreement with Huron (Ex. A, ¶ 4; H 70-149, attached as Ex. 2 to Ex. A, Section 2.2(h)). Defendants could not pursue a claim against DeGeer for misconduct with clients during this time period even if DeGeer were guilty of such activity. Documents reflecting marketing activities during this time frame are therefore irrelevant.

Defendants' argument that post-October 28, 2009, documents "may well" reveal improper conduct by DeGeer with Galt/Huron clients prior to his resignation is without merit.

8

Huron conducted a lengthy investigation of DeGeer upon the dissolution of DeGeer's partnership with Defendants and found no wrongdoing on DeGeer's part. (Ex. A, ¶ 12; H 9518-9519, attached as Ex. 8 to Ex. A). Huron even reviewed an image of DeGeer's computers and found no evidence that DeGeer violated his restrictive covenants or disparaged anyone. Id.

Even if DeGeer were willing to produce documents with no relevance to this dispute, he is prohibited from doing so under the terms of his October 2009 confidentiality agreement with CRA (Ex. A, ¶ 14; D 676-678, attached as Ex. 10 to Ex. A, Section II). That agreement states that DeGeer may not disclose any marketing activity performed on CRA's behalf to a third party, unless ordered by a court. Id. The documents in DeGeer's possession relating to CRA's marketing efforts are not his to give; they belong to CRA. Defendants must subpoena CRA and allow CRA to state objections if Defendants wish to obtain these documents. Defendants' offer to redact "proprietary information" from the requested documents (Motion to Compel, ¶ 7) does not cure the fact that such a disclosure by DeGeer would be a breach of this contract and that identification of CRA's client information itself would cause harm to CRA. Ms. Folk has spoken with counsel for CRA, Jonathan Yellin, who has reviewed this Response to Defendants' Motion to Compel and agrees with DeGeer's position on this matter as it pertains to DeGeer's confidentiality obligations to CRA and CRA clients.

### *Request No. 52*

Counsel for DeGeer, Ms. Folk, has communicated in every way possible to counsel for Defendants, Mr. Nelson, that DeGeer has produced any and all documents in his possession or control responsive to Request No. 52 for the pre- and post- October 2009 time frames. (See Ex. B.) For whatever reason, Mr. Nelson refuses to accept Ms. Folk's representations in this regard.

9

For these reasons, Plaintiff Randall S. DeGeer respectfully requests that this Court enter an Order denying Defendants M. Scott Gillis, Joseph R. Shalleck, and Leroy J. Mergy's Motion to Compel DeGeer's Production of Documents in Response to Defendants' Document Request Nos. 50, 51 and 52, and to grant any other relief the Court deems just.


By: <u>s/Peter M. King</u>
     One of the Attorneys for Plaintiff

Peter M. King
William H. Jones
Kasey M. Folk
Dorothy D. Moran
**CANEL, KING & JONES**
10 South LaSalle Street, Suite 3400
Chicago, IL 60603
312/372-4142
312/372-6737 – Facsimile
kfolk@kingjoneslaw.com
pking@kingjoneslaw.com