IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL S. DEGEER | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 09 C 6974 |
| M. SCOTT GILLIS; JOSEPH R. SHALLECK; and LEROY J. MERGY, | ) ) ) ) ) | Magistrate Judge Nan R. Nolan |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This breach of contract action arises from the alleged failure of Defendants M. Scott Gills, Joseph R. Shalleck, and Leroy J. Mergy (hereinafter collectively referred to as "Defendants") to abide by the terms of a partnership agreement to pay a bonus or incentive compensation for Plaintiff Randall S. DeGeer's ("DeGeer") services in 2008 and 2009 as a Managing Director of the Galt division of Huron Consulting Services LLC ("Huron"). Before the Court are several discovery disputes between the parties. For the following reasons, the Court denies Plaintiff's Motion to Compel the Depositions of Defendants in Chicago, Illinois [#84], grants Defendants' Motion to Compel Plaintiff's Production of Documents [#86] to the extent described below, and overrules in part and sustains in part Defendants' Objections to Plaintiff's Designation of Certain Materials As Privileged [#88].

## Background

DeGeer and Defendants are in the management consulting business. DeGeer was employed as a Managing Director in the Galt division of Huron from July 2006 to October 28, 2009. Defendants were the practice leaders of the Galt division at Huron from March 2006 through December 2009. DeGeer claims entitlement to a bonus calculated on the basis of a formula applied to annual Earn-Out payments made by Huron to Defendants' liability corporation as part of the

purchase price for Huron's acquisition of certain assets of MSGalt & Company LLC ("Galt"), of which Defendants were the sole members and owners. DeGeer brought what eventually became a five-count complaint. Count I alleges Breach of Contract; Count II alleges Breach of Partnership Agreement; Count III alleges Promissory Estoppel; Count IV alleges Quantum Meruit; and Count V alleges Breach of Fiduciary Duty. Defendants filed counterclaims for breach of fiduciary duty, tortious interference with business expectancy, and breach of contract.

## Discussion

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Upon a showing of good cause, a court may order "discovery of any matter relevant to the subject matter involved in the action." Magistrate judges are granted broad discretion in addressing and resolving discovery disputes. Weeks v. Samsung Heavey Indus., Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997).

### I.     Location of Depositions of Defendants

The parties cannot agree on the location for the individual Defendants' depositions. DeGeer has noticed the depositions of Defendants in Chicago, Illinois. Defendants object to their depositions taking place in Chicago since they are citizens of other states. Gillis is a citizen of South Carolina, and Shalleck and Mergy of Connecticut. Defendants work out of their places of residence in South Carolina and Connecticut or on-site at client locations.

The Federal Rules of Civil Procedure do not state where depositions may be taken. "Thus the examining party may set the place for the deposition of another party wherever he or she wishes subject to the power of the court to grant a protective order under Rule 26(c)(1)(B) designating a different place." 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2112 (2010). Under Rule 26(c)(1)(B), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the

following: . . . specifying terms, including time and place, for the disclosure or discovery . . . ." Fed. R. Civ. P. 26(c)(1)(B). This Court has previously recognized, however, that "[a]s a general matter, there is a presumption that a defendant . . . shall be deposed in the district where the deponent resides." Healthsouth Corp. v. Sussman, 2003 WL 685576, at *2 (N.D. Ill. Feb. 26, 2003). A court has "wide discretion in selecting the place of examination." 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2112 (2010).

In this case, good cause has been shown for a protective order designating the districts in which the Defendants reside as the sites for their depositions. Defendants have submitted uncontroverted evidence establishing that having to travel to Chicago for their depositions will impose a substantial hardship on them. On December 31, 2009, Defendants repurchased assets of the Galt business. Since January 1, 2010, Defendants have been engaged more than full-time rebuilding, operating and managing Galt as a independent firm, without the benefit of support services previously provided under Huron's ownership. (Defendants' Declarations at ¶ 4). Defendants state that in addition to having to attend to new administrative and organizational responsibilities, this requires extensive time and effort from each of them in servicing existing clients, soliciting new clients, and in recruiting and training new employees and independent contractors. Id. Traveling to Chicago for a deposition will disrupt Defendants' already overcrowded and busy business schedule.

DeGeer's expense analysis does not compel a different result. DeGeer's assertion that it would be more cost efficient to proceed with the depositions in Chicago is based on the fact that "Defendants have offices in Chicago, and so do their attorneys." (Doc. 84, at 3). In response, Defendants explain that the assets they acquired in the repurchase from Huron included a mailing address in Chicago but none of the Defendants actually conducts any business out of that Chicago address. Moreover, Defendants will be represented at their depositions by their lead counsel, whose office is in New York. Finally, DeGeer has not argued that Defendants' counterclaim is

permissive. So, the fact that Defendants filed a counterclaim is not sufficient to require them to travel to Chicago for their depositions. Sears v. American Entertainment Group, Inc., 1995 WL 66411, at * 2 (N.D. Ill. Feb. 13, 1995) (stating that if the counterclaim is compulsory, the defendant "remains entitled to protection from deposition anywhere but for his or her residence or business location.").

Ristevski v. S&P Carrier, LTD, 2010 WL 1687878 (N.D. Ill. Apr. 26, 2010), the only case cited by DeGeer, is distinguishable. In Ristevski, the magistrate judge concluded that a retired truck driver would not suffer undue physical hardship to his injured right shoulder nor financial hardship if required to be deposed outside his district of residence. The court distinguished two other cases involving working truck drivers who would suffer financial hardship by being pulled away from one of their runs to make a trip to another state for a deposition. Here, Defendants have demonstrated the disruption to Galt that travel to a deposition in Chicago would cause. Defendants are the sole owners of Galt and are currently engaged more than full-time in operating and managing Galt as an independent firm. Depositions in Chicago will interfere with Defendants' busy business schedules. Under the circumstances of this case, the general presumption in favor of Defendants being deposed in their home districts controls.

## II. Defendants' Document Request Nos. 50 and 51

Defendants seek an order compelling DeGeer to comply with Request Nos. 50 and 51 of Defendants' First Request for Production of Document, which state:

> Request No. 50: All documents reflecting, referring or relating to Plaintiff's solicitation of Clients, as defined in Section 6.4 of the SMA, during the period from September 2008 to date.
>
> Request No. 51: All documents reflecting, referring or relating to Plaintiff's solicitation of, or marketing activities directed to, actual or potential clients (including, without limitation, Anglo American, Cynthia Carroll, Dow Chemical, Rohm and Haas, Alcoa, Belden, and Synventive) during the period from September 2008 to date.

DeGeer objected to these requests on relevancy grounds, among others.

DeGeer has produced documents responsive to these requests from the pre-October 28, 2009 time frame. Defendants argue that responsive documents post-dating DeGeer's resignation from the Galt division on October 28, 2009 may reflect a continuation of marketing and solicitation efforts beginning before that date which would be relevant to Defendants' counterclaim of breach of fiduciary duty in diverting Galt division business and business opportunities. Defendants also contend that such documents may reveal DeGeer's use of proprietary Galt information (including its methods, approaches and frameworks for providing consulting services to clients), which would be directly relevant to Defendants' counterclaim for DeGeer's breach of his Galt non-disclosure agreement. DeGeer responds that his post-October 28, 2009 marketing activities have no relevance to any claim or defense in this case. DeGeer believes that Defendants' efforts to obtain documents relating to his marketing efforts after he left Huron are designed to harass DeGeer and his current employer, Charles River Associates, Inc. ("CRA").

The requested post-October 28, 2009 documents are relevant to Defendants' counterclaims. Defendants' First Counterclaim (Breach of Fiduciary Duty) alleges that: "As a further result of DeGeer's breaches of fiduciary duty, DeGeer usurped and diverted to his own benefit business and business opportunities belonging to Gillis, Shalleck and Mergy and the Galt Division." Doc. 82, at ¶ 40. Defendants' Second Counterclaim (Tortious Interference with Business Expectancy) alleges that: "As a result of DeGeer's interference with Gillis, Shalleck and Mergy's business expectancy to continue their relationships with clients and employees of the Galt division, Gillis, Shalleck and Mergy were precluded to continuing relationships and deriving income from clients that they otherwise would have realized. Id. at ¶ 50. Defendants' Third Counterclaim (Breach of Contract) alleges that: "DeGeer breached his [Non-Disclosure Agreement] by misusing confidential and proprietary information for his own benefit and to the detriment of Gillis, Shalleck and Mergy" and by "disclosing such information to others without the consent of Gillis, Shalleck, or Mergy." Id. at ¶¶ 55, 56.

Under Rule 26(b)(1), Defendants are entitled to discover any non-privileged matter that is relevant to their counterclaims. Documents reflecting DeGeer's client solicitation and marketing efforts following his departure from the Galt division on October 28, 2009 are relevant to Defendants' breach of fiduciary duty claim. Documents post-dating DeGeer's departure may reveal marketing and solicitation efforts beginning before his departure. Moreover, to the extent such documents reveal DeGeer's use of proprietary Galt information they would be relevant to Defendants' counterclaim for breach of the Galt non-disclosure agreement. DeGeer complains that Defendants cite no factual support for the allegation in their Counterclaim that DeGeer solicited clients of the Galt division for his own benefit. At this stage of the proceedings, Defendants do not need to come forward with evidence to support their counterclaim. There is no requirement in the Federal Rules of Civil Procedure that Defendants support their counterclaims with factual proof before being permitted to engage in discovery.

With regard to Request No. 50, DeGeer argues that under the terms of his Senior Management Agreement with Huron ("SMA"), he was only prohibited from providing future services for a period of one year to one client, Anglo-American. DeGeer has submitted an affidavit stating that he has not solicited business from or provided services to Anglo-American since he resigned from Huron on October 28, 2009. Defendants counter that DeGeer has "flatly misrepresented" that there are no persons or firms that fit the definition of Client except Anglo American but do not state what other persons or firms meet the definition. The Court cannot determine, based on the record before it, whether any others persons or firms meet the definition of Client. For purposes of discovery, it does not matter because Defendants' claims are not limited by the SMA. Defendants shall provide DeGeer with the names of the persons or firms they believe meet the definition of Client in Section 6.4 of DeGeer's SMA. Defendants shall limit their list relating to actual clients to those serviced directly or indirectly by the Galt Division, as opposed to all divisions of Huron, during the two-year period. Without admitting that those person or firms meet the definition of Client,

DeGeer shall respond to Request No. 50 with regard to the list provided by Defendants.

DeGeer further contends that his marketing activities between October 28, 2009 and December 31, 2009 are irrelevant because Defendants are precluded from pursuing any claims with regard to DeGeer's conduct with clients prior to December 31, 2009. In support of his contention, DeGeer says that Defendants surrendered all such rights in their December 31, 2009 Asset Purchase Agreement ("APA") with Huron. The Court has reviewed Section 2.2(h) of Defendants' APA with Huron, and that section does not preclude Defendants from pursuing their claims regarding DeGeer's conduct with clients prior to December 31, 2009. As Defendants explain, that section of the APA merely states that Huron reserved the right to enforce the non-solicitation of clients provision in Section 6.4 of DeGeer's SMA in regard to conduct prior to December 31, 2009. Defendants have not asserted any counterclaims under the SMA, but rather have alleged breach of fiduciary duty, tortious interference with business expectancy, and breach of DeGeer's Non-Disclosure Agreement with Galt.

DeGeer also points out that Huron conducted an investigation of DeGeer after he advised Defendants that he was dissolving their partnership on May 18, 2009. Huron reviewed an image of DeGeer's computers and found no evidence that he had violated his restrictive covenants or disparaged anyone. Although DeGeer describes Huron's investigation as "lengthy," Defendants need not accept Huron's finding at face value. Defendants are entitled to test the accuracy of Huron's findings through discovery.

Finally, DeGeer argues that he is prohibited from producing documents responsive to these requests for the post-October 2009 time frame by his October 2009 confidentiality agreement with CRA. DeGeer says that the documents belong to CRA and contends that Defendants must subpoena CRA and allow CRA to state objections. Contrary to DeGeer's contention, Defendants need not subpoena CRA documents in DeGeer's possession from CRA, but properly requested them through normal channels of obtaining party discovery. The CRA agreement provides that

DeGeer may disclose confidential information pursuant to a court order provided that he "give prompt notice of such request to CRA's General Counsel prior to such disclosure so that CRA can take any appropriate action it deems necessary to limit or implement such disclosure." (Doc. 89, Exh. 10 to Exh. A). DeGeer apparently gave such notice. In his Response, DeGeer states that his counsel "has spoken with counsel for CRA, Jonathan Yellin, who . . . agrees with DeGeer's position on this matter as it pertains to DeGeer's confidentiality obligations to CRA and CRA clients." (Doc. 89, at 9). Because disclosure of post-October 28, 2009 documents will be pursuant to court order, DeGeer will not be in breach of this contact. DeGeer's confidentiality concerns also do not prevent disclosure here. The district judge has entered a Stipulated Protective Order in this case, and DeGeer has not stated that the Protective Order is an insufficient safeguard of CRA's interests. Moreover, defense counsel states that Defendants have no objection to the redaction of non-responsive proprietary information, including the substance of any business proposals made.

### III.     Plaintiffs' Designation of Certain Materials as Privileged

Defendants object to DeGeer's designation of nine email communications and various attachments as privileged and attorney work-product. In August 2009, DeGeer was required to deliver all Huron-related electronic data in his possession to Huron and its then counsel (Mayer Brown) in connection with an internal investigation. DeGeer Aff. at ¶ 2. DeGeer complied with the request. Id. DeGeer turned over to Huron his Huron-issued laptop computer from which it created an image of the hard drive, data DVDs containing copies of Huron-related data from his personal laptop computer, and data DVDs containing Huron-related data from an external hard drive in DeGeer's possession. Id. at ¶ 3. In advance of providing these materials to Huron, DeGeer was specifically instructed in writing by Huron's Legal and Information Technology Departments not to move or delete any data from his Huron-issued laptop, and he complied with that request. Id. at ¶ 4. DeGeer withheld from the data DVDs his communications with his counsel, and provided a log

indicating that he was withholding these materials. Id. at ¶ 5.

In August 2009, DeGeer was aware of three privileged communications on his Huron-issued laptop: (1) an April 30, 2009 email from DeGeer to Mr. King; (2) a May 7, 2009 email from Mr. King to DeGeer (with an attachment); and (3) a May 8, 2009 email from Mr. King to DeGeer (with an attachment). Id. at ¶ 6. These three emails were sent on DeGeer's work email address. Id. DeGeer maintained his privilege in these communications with Huron's new counsel (Barnes & Thornburg) in April 2010. (Doc. 90, Ex. D). Mr. King specifically alerted Larry Blust at Barnes & Thornburg as to the existence of the three privileged communications and requested that Mr. Blust remove them from any electronic data production. Id. With regard to those three communications, Mr. Blust complied with Mr. King's request.

In June 2010, Huron produced an external hard drive in response to Defendants' subpoena. DeGeer Aff. at ¶ 7. This external hard drive contained the image of the hard drive from DeGeer's Huron-issued laptop computer, the data DVDs DeGeer provided to Huron, and copies of emails that resided on the Huron server. Id. At that time, DeGeer and his counsel became aware that six additional privileged materials were contained on this external hard drive which Huron turned over to Defendants' counsel. Id. Unlike the three previously discovered communications, these six communications were sent via DeGeer's personal email address while apparently utilizing the Huron server. Id. at ¶ 8. DeGeer and his counsel were previously unaware that communications sent on DeGeer's personal email account would be maintained on Huron's server. Id.

DeGeer seeks a finding sustaining his assertion of privilege and work-product with respect to all documents identified in his July 6, 2010 log. DeGeer contends that the communications are protected from disclosure under the attorney-client privilege and the attachments to six of the communications consist of work product prepared for purposes of litigation. Defendants argue that DeGeer waived any privilege or work-product protection with respect to those materials. DeGeer denies waiver. DeGeer says that he was diligent in asserting and maintaining his privilege in

advance of litigation and throughout the discovery process in this case.

Defendants contend that DeGeer has not met his burden of demonstrating that the emails are privileged or that the attachments are protected as trial-preparation material. Illinois law of privilege applies here. Under Illinois law, "[t]he purpose of the attorney-client privilege is to encourage and promote full and frank consultation between the client and legal advisor by removing the fear of compelled disclosure of information." Consolidation Coal Co. v. Bucyrus-Erie Co., 432 N.E.2d 250, 256 (Ill. S.Ct. 1982). In defining the attorney-client privilege, the Illinois Supreme Court "has stated that where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal adviser, except the protection be waived." Fischel & Kahn, Ltd v. van Straaten Gallery, Inc., 727 N.E.2d 240, 243 (Ill. S.Ct. 2000).

Federal law governs the scope and application of the work product doctrine. The doctrine "is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612, 622 (7th Cir. 2010). As codified, the work product doctrine states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). An assertion of work-product privilege may be overcome upon a showing of "substantial need" and "undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

Defendants argue that DeGeer has failed to provide sufficient factual information for the Court to determine whether the nine communications are privileged or attorney work-product. Rule

26(b)(5)(A) requires that the withholding party make a claim of privilege or protection as trial-preparation material expressly and "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). DeGeer's description of the documents provides sufficient information for the Court to assess the applicability of the attorney-client privilege. For each document, DeGeer provided the date of the document, all authors and recipients of the document, including their capacities, and a description of the subject matter of the document. DeGeer's Opposition describes the disputed documents as "confidential communications between DeGeer and his counsel, Mr. Jones and Mr. King, where legal advice was sought. The only party cc'd on any of the communications (two to be exact) is Tara DeGeer. Communications containing Ms. DeGeer as a copied recipient remain privileged pursuant to the attorney-client privilege doctrine since Ms. DeGeer is a client in this case, and also pursuant to the marital privilege doctrine since she is DeGeer's wife." (Doc. 90, at 4-5). DeGeer has sufficiently shown that the attorney-client privilege applies to the nine communications in question. In addition, DeGeer did not waive the attorney-client privilege by copying his wife on two of the email communications. DeGeer and his wife share a common legal interest in pursuing claims against the Defendants regarding the 2008 and 2009 bonus payments, the dispute underlying the instant lawsuit. Grochnocinski v. Mayer Brown Rowe & Maw LLP, 251 F.R.D. 316, 326-27 (N.D. Ill. 2008).

The Court agrees that DeGeer has not provided enough information to support his assertion of work product protection as to the attachments, and DeGeer has otherwise conceded that the attachments are not protected by the work product doctrine. In their Objections, Defendants argue that the three attached engagements letters are not protected from disclosure by the work-product doctrine. (Doc. 88 at 9-10). Defendants further argue that the remaining three attachments are not protected by the work-product doctrine because they were not prepared by DeGeer's attorneys. Id.

at 10. DeGeer fails to acknowledge or respond to these arguments and therefore concedes Defendants' position that the attachments are not attorney work-product. Accordingly, the attachments must be disclosed.

Turning to Huron's production of the six emails sent via DeGeer's personal email address, Defendants say that DeGeer's explanation of the production of these six emails "defies common sense." Doc. 107, at 2 n.1. Defendants believe that it is much more likely that Huron produced the personal emails because they were on DeGeer's hard drive, but the evidence in the record does not support that contention. DeGeer's counsel, Kasey Folk, has provided an affidavit supporting DeGeer's version of events. Ms. Folk's affidavit states that on June 21, 2010, she had a telephone conversation with counsel for Huron, Larry Blust. Folk Aff. at ¶ 2. Mr. Blust informed Ms. Folk that prior to Huron's production of the external hard drive he had instructed a Barnes & Thornburg IT employee to perform a search for privileged materials using the names of DeGeer and his attorneys. Id. Mr. Blust informed Ms. Folk that he was investigating why the additional six communications between DeGeer and his attorneys Peter King and Bill Jones containing dates of May 11, 2009, May 12, 2009, and May 19, 2009 had not appeared in the results list. Id. On or about July 21, 2010, Mr. Blust informed Ms. Folk that subsequent to August 2009 Huron copied additional materials from the Huron server and added them to the data it had obtained from DeGeer, including communications sent and received utilizing the Huron server. Id. at ¶ 3. Mr. Blust informed Ms. Folk that it is likely that the six newly discovered communications were contained on the external hard drive as a result of that addition of new materials. Id. The Court has no reason to doubt DeGeer's and his counsel's representations. Therefore, on the current record, the Court finds that the six additional communications sent via DeGeer's personal email address were likely pulled from Huron's server and added to the external hard drive after DeGeer provided Huron with his electronic data.

Having found that the disputed communications (without attachments) are privileged, the determination of whether the privilege has been waived is governed in part by Federal Rule of

Evidence 502. Huron produced the six emails sent via DeGeer's personal email address in response to a subpoena from Defendants in this federal proceeding. Rule 502 addresses the effect of disclosure of protected information in federal court proceedings or to a federal public office or agency. Specifically, Rule 502(d) concerns agreements between the parties providing for mutual protection against waiver in that proceeding. Rule 502(d) states that "[a]n agreement on the effect of disclosure in a Federal proceeding is binding only on the parties to the agreement, unless it was incorporated into a court order." Here, the Stipulated Protective Order entered by the district court judge (doc. 34) has a provision which expressly addresses inadvertent production of privileged documents. Paragraph 24 of the Stipulated Protective Order states that the "inadvertent production of any confidential, privileged, or work product documents shall be without prejudice to any claims that the document is confidential or privileged, and shall constitute neither a waiver of any claim of privilege that may otherwise attach thereto nor a general waiver of such claim or privilege." (Doc. 34, at ¶ 24). The affidavits of DeGeer and Ms. Folk satisfy the Court that Huron's production to Defendants of the six privileged communications sent via DeGeer's personal email address while apparently utilizing the Huron server was inadvertent. Because the production as to these six emails was inadvertent, paragraph 24 of the Stipulated Protective Order controls and DeGeer has not waived his privileged as to these communications.

With regard to the three privileged email communications which DeGeer instructed Huron to remove from the hard drive Huron produced to Defendants, the typical inadvertent disclosure analysis does not apply because these emails were not inadvertently or mistakenly produced. In August 2009, DeGeer was employed by Huron, and the laptop was Huron property. DeGeer's surrender of the laptop with the three email communications was at the direction of Huron's legal counsel (Mayer Brown). Mayer Brown advised DeGeer's counsel that DeGeer had "an obligation to preserve documents and other potential evidence relating to the investigation and other recent events at Huron." (Doc. 90-2 at 2). Mayer Brown instructed DeGeer's counsel to "direct your client

not to delete any files and to bring or send in his laptop to Huron as soon as possible." Id. DeGeer complied but took affirmative steps to maintain the confidentiality of the three attorney-client communications sent on his work email address which were contained on his Huron-issued laptop by advising Huron's counsel (Mayer Brown and Barnes & Thornburg) of the existence of the three emails and asserting a privilege over those emails. (Doc. 90-2 at 5).

The relevant question appears to be whether DeGeer waived the attorney-client privilege by communicating with his counsel over his work email address and on his Huron supplied laptop. Courts have developed a four and sometimes five factor test to determine whether information stored on an employer's computer waives a confidential communication for purposes of the attorney-client privilege: (1) does the employer maintain a policy banning personal use of e-mails; (2) does the employer monitor the use of its computer or e-mail; (3) does the employer have access to the computer or e-mails; (4) did the employer notify the employee about these policies; and (5) how did the employer interpret its computer usage policy? See United States v. Hatfield, 2009 WL 3806300, at *8-10 (E.D. N.Y. Nov. 13, 2009).

Neither party specifically discussed these factors in their briefs or cited any cases that address this precise issue. Applying these factors to the limited record, the Court concludes that DeGeer did not waive the privilege. Because the record does not contain Huron's computer usage policy, the Court cannot determine whether Huron prohibited employees from using their company computers to conduct personal legal matters. Other than Huron and its counsel's review of electronic documents in connection with its internal investigation relating to earn-out payments by Huron to MS Galt or compensation paid to DeGeer, the record does not indicate whether Huron monitored employee's computers or e-mail messages. The record seems to clearly indicate that Huron had the right to access DeGeer's Huron-issued laptop. There is no evidence with respect to whether DeGeer personally knew about a Huron computer usage policy. The final factor is controlling here. The record unambiguously demonstrates that Huron believed that employees did

not waive the attorney-client privilege by communicating with counsel over their work email addresses and on Huron computers. Huron's counsel (Barnes & Thornburg) conducted a privilege review on DeGeer's behalf before producing documents responsive to Defendants' subpoena. Folk Aff. at ¶ 2; see Hatfield, 2009 WL 3806300, at *10 (holding employee did not forfeit applicable privileges by maintaining personal legal documents on company computers where employer's counsel conducted privilege review which included screening out material protected by "individuals' privileges" from any document production it made). If Huron interpreted its computer usage policy as meaning that employees waive the attorney-client privilege by using their work email addresses and Huron computers to communicate with counsel, such a review would have been unnecessary and violated Huron's obligation to produce all non-privileged responsive documents responsive to Defendant's subpoena. Id. Accordingly, the Court finds that DeGeer did not waive the attorney-client privilege with respect to the three email communications Huron withheld from its production of DeGeer's hard drive.

## CONCLUSION

For these reasons, Plaintiff's Motion to Compel the Depositions of Defendants in Chicago, Illinois [#84] is denied, Defendants' Motion to Compel Plaintiff's Production of Documents [#86] is granted to the extent described herein, and Defendants' Objections to Plaintiff's Designation of Certain Materials As Privileged [#88] is overruled in part and sustained in part.

**E N T E R :**

*[signature: Nan R. Nolan]*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: September 17, 2010**