# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6974 | **DATE** | 11/5/2010 |
| **CASE TITLE** | Randall S DeGeer vs. M Scott Gillis | | |

**DOCKET ENTRY TEXT**

Plaintiff Randall S. DeGeer's Motion to Clarify the Court's September 17, 2010 Memorandum Opinion and Order as it Relates to Documents Responsive to Defendants' Request Nos. 50 and 51 [136] is granted to the extent that this Court clarifies that (1) DeGeer shall produce documents responsive to Request No. 50 with respect to all persons or companies listed on the Client List provided by Defendants subject to one caveat detailed below and (2) DeGeer's production of documents responsive to Request No. 51 is not limited to the Client List produced by Defendants with regard to Request No. 50, and is denied in all other respects.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

On July 16, 2010, Defendants filed a motion to compel DeGeer's production of documents responsive to Defendants' Document Request Nos. 50 and 51 (Doc. 86). Document Request No. 50 seeks all documents reflecting, referring or relating to DeGeer's solicitation of Clients, as defined in Section 6.4 of the SMA, during the period from September 2008 to date. Defendants' Request No. 51 seeks all documents reflecting, referring or relating to DeGeer's solicitation of, or marketing activities directed to, actual or potential clients (including, without limitation, Anglo American, Cynthia Carroll, Dow Chemical, Rohm and Haas, Alcoa, Belden, and Synventive) during the period from September 2008 to date. On September 17, 2010, this Court granted Defendants' Motion to Compel "to the extent" described in the Opinion. The parties now disagree as to the scope of discovery permitted by that Opinion as it relates to Defendants' Request Nos. 50 and 51. Although the Court finds its prior rulings to be clear, to avoid any confusion regarding the scope of the Opinion, it reiterates its rulings regarding Request Nos. 50 and 51 herein.

A.   **Request No. 50**

In its Opinion, the Court overruled DeGeer's relevancy and other objections to Request Nos. 50 and 51. With respect to Request No. 50, DeGeer and Defendants disagreed during the briefing as to whether there are any persons or firms that meet the definition of "Client" in Section 6.4 of DeGeer's SMA with Huron except Anglo American. The Court found that it could not tell from the record whether other persons or firms meet the definition of "Client" in Section 6.4 of the SMA but that resolution of the matter was unnecessary for purposes of discovery because Defendants' counterclaims are not based on the SMA. Regarding Request No. 50, the Court ordered Defendants to provide DeGeer with the names of the persons or firms they believe meet the definition of Client in Section 6.4 of DeGeer's SMA with Huron. As suggested in Defendants' reply in support of their motion to compel (doc. 106 at 5), the Court limited the category of actual clients which Defendants believe meet the definition of Client to "those serviced directly or indirectly by the Galt division, as opposed to all divisions of Huron, during the two-year period." (Doc. 122 at 6). Importantly, the SMA's definition of Client is not limited to this category of actual clients, but also includes "persons or firms to whom Executive has submitted a proposal (or assisted in the submission of a proposal) to perform services during the six (6) month

period immediately preceding termination of Executive's employment." The Court ordered DeGeer to respond to Request No. 50 with regard to the Client List provided by Defendants without admitting that those persons or firms meet the definition of "Client" in the SMA. Neither side appealed this Court's rulings to the district court.

On September 30, 2010, Defendants provided DeGeer with a list of 90 names which they believe meet the definition of "Client" in the SMA. DeGeer says and Defendants do not seem to dispute that only seven of those names fit the category of actual clients set forth in the Opinion (i.e., actual clients serviced directly or indirectly by the Galt Division during the two-year period). DeGeer states that on October 14, 2010, he produced to Defendants documents referring or relating to the seven companies fitting the definition of Client in the Opinion.

Defendants contend that they are entitled to responsive documents relating to the 90 names on their Client List. Defense counsel's letter to DeGeer's counsel dated October 20, 2010 explains that Defendants' Client list "includes all persons and firms Defendants believe in good faith to be either (i) actual clients of the Galt division serviced in the 24-month period or (ii) prospective clients solicited by Plaintiff during the last 6 months of his employment at Huron." (Doc. 136-1). Under DeGeer's view, the Opinion only requires him to produce documents referring or relating to the seven companies fitting the definition of actual client as defined in the Court's Opinion. DeGeer believes his production is consistent with the Opinion. DeGeer also points out that the actual non-solicitation provision which applies to DeGeer's conduct under the SMA is narrower in scope that the definition of "Client" under the SMA, and there is only one company, Anglo-American, which fits the definition of "Client" as applied to the SMA's non-solicitation provision. At the hearing on DeGeer's motion to clarify, his counsel expressed concern regarding the size of the Client List provided by Defendants. DeGeer has not, however, indicated how many persons or firms he believes meets the prospective client category of "Client" in the SMA. On October 27, 2010 in open court, defense counsel, as an officer of the court, represented that there is a basis for each and every one of the 90 names on Defendants' Client List.

Defendants' Client List properly included both actual and prospective clients. Again, it does not matter which or how many persons or firms actually meet the definition of "Client" in the SMA. Defendants' counterclaims are not based on the SMA, and therefore its definition of "Client" does not dictate what discovery is ultimately permissible. The focus on whether certain persons or firms meet the definition of "Client" in the SMA is simply a distraction. Request No. 50's request for documents relating to solicitation of prospective clients to whom DeGeer submitted or assisted in the submission of a proposal within 6 months prior to termination is relevant to Defendants' counterclaims. Defendants therefore could have crafted a document request similar to Request No. 50 which sought information about DeGeer's solicitation of the 83 specific prospective clients on their Client List (as long as DeGeer had contact with those companies or persons while employed by Huron), which is essentially what the Court ordered. Accordingly, DeGeer is directed to respond to Request No. 50 with respect the persons and firms included on the Client List provided by Defendants subject to one caveat described below.

**B.      Request No. 51**

With regard to Request No. 51, DeGeer appears to believe that his production of responsive documents is limited to the Client List produced by Defendants and need not include all marketing and soliciting information for any actual or potential client. Defendants are correct that the production of documents responsive to Request No. 51 is not limited to "Client" as defined in the SMA or included on the "Client List" provided by Defendants regarding Request No. 50. There are two separate and independent document requests at issue here, one limited to the definition of "Client" under the SMA (Request No. 50) and the other not (Request No. 51). The Court's ruling on Request No. 50 with regard to the Client List cannot be attributed to Request No. 51. Request No. 51 is not limited to "Client" as defined in the SMA, but rather seeks all documents reflecting, referring or relating to DeGeer's solicitation of, or marketing activities directed to, actual or potential clients, including certain named companies. Contrary to DeGeer's suggestion, whether the SMA prohibits DeGeer from soliciting or providing services to the other companies and/or persons listed in Request No. 51 or prohibits DeGeer from contacting any companies or persons listed in Request No. 51 is also not relevant. As a practical

| STATEMENT |
|---|

matter, DeGeer's response to Request No. 51 may be no broader in scope than the response to Request No. 50 as limited by the Client List provided by Defendants, unless DeGeer solicited or engaged in marketing activities directed to actual or potential clients not on the Client List. DeGeer's fear that read broadly, Request No. 51 would include any company with which DeGeer has had any contact since leaving Huron and joining Charles River Associates, Inc. (CRA), regardless of whether DeGeer or anyone at Galt had any contact with the company or person while DeGeer was employed by Huron, is unfounded. Defendants have confirmed in writing that Request No. 51 "applies only to companies or persons with whom DeGeer did have contact while employed by Huron." (Doc. 145, at 2).

To ensure that the documents sought by Request No. 50 are similarly limited to relevant matters, the Court finds that the response to Request No. 50 should be restricted to companies or person with whom DeGeer had contact while employed by Huron. Thus, DeGeer shall respond to Request No. 50 as it relates to the Client List subject to the caveat that DeGeer need only produce responsive information if he had contact with the company or person on the Client List while employed by Huron.

As Defendants agreed at the October 27, 2010 hearing on the matter, defense counsel shall be permitted to inspect the documents produced in response to Request Nos. 50 and 51 on an "attorneys eyes only" basis in the first instance. Counsel shall meet and confer amongst themselves and with counsel for CRA prior to disclosing any such documents to Defendants. The Court is willing to amend the protective order consistent with any agreements reached by counsel. If counsel cannot agree on disclosure to Defendants, the parties shall jointly submit a memorandum with areas of disagreement and each sides' proposed course of action.

Lastly, the Court is directing counsel to handle the remainder of discovery in a professional manner. Counsel must increase the level of accommodation to ensure that all relevant information is exchanged in an efficient and timely manner.